UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - X
                                :
UNITED STATES OF AMERICA        :      **SUPERSEDING INDICTMENT**
                                :
         - v. -                 :      S1 15 Cr. 680 (JMF)
                                :
CARLTON P. CABOT,               :
                                :
         Defendant.             :
                                :
- - - - - - - - - - - - - - - - X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/7/15
```

### COUNT ONE

**(Conspiracy to Commit Securities Fraud)**

The Grand Jury charges:

### Relevant Entities and Individuals

1.    At all times relevant to this Indictment, Cabot
Investment Properties ("CIP") was a privately-held real estate
investment management company incorporated in Massachusetts, with
its principal place of business in New York, New York.  CIP
specialized in commercial real estate investments, including
so-called tenants-in-common ("TIC") securities offerings.  From in
or about 2003 through in or about 2012, CIP sponsored and oversaw
approximately 18 separate TIC securities offerings (the "TIC
Investments") that were marketed to investors located all over the
United States (the "TIC Investors").

2.    At all times relevant to this Indictment, CARLTON P.
CABOT, the defendant, was the founder, President, and Chief Executive
Officer of CIP.  Among other things, CABOT helped create the TIC

Investments and was primarily responsible for locating investors and overseeing the TIC Investments in general.

3.    At all times relevant to this Indictment, CC-1 was the Chief Operating Officer of CIP.    Among other things, CC-1 helped create the TIC Investments and was primarily responsible for managing the finances of the TIC Investments and reporting the quarterly financial results to the TIC Investors.

### The TIC Investments

4.    A TIC investment is a real estate investment in which investors collectively own a piece of commercial real estate – such as an apartment house, a shopping center, or an office building – and are entitled to receive a portion of the rental income from the property after the mortgage payments and operating expenses for the property have been paid.

5.    CIP structured and sold the 18 TIC Investments as securities.    CIP financed the acquisition of the TIC properties – which were located in Florida, Ohio, Wisconsin, Indiana, Connecticut, Kentucky, Georgia, and North Carolina – through a combination of equity investment from the TIC Investors and mortgage financing.

6.    For each TIC Investment, CIP formed a wholly-owned subsidiary that was responsible for managing the property (the "Master Lessee Subsidiary" or "LeaseCo Subsidiary").    For example,

-2-

the LeaseCo Subsidiary for the "Cabot East Town" TIC Investment was called "Cabot East Town LeaseCo LLC." After the TIC Investors purchased their shares in the TIC Investment, the TIC Investors then leased the property to the LeaseCo Subsidiary pursuant to a Master Lease Agreement, which outlined the various duties and responsibilities of the LeaseCo Subsidiary.

7.   Under the terms of the Master Lease Agreement, the LeaseCo Subsidiary was responsible for managing the day-to-day operations of the TIC Investment properties, including collecting rent from tenants, paying bills, and making the mortgage payments on the property. The LeaseCo Subsidiary was also responsible for paying "base rent" to the TIC Investors – i.e., regular disbursements from the operating profits of the property. CIP typically sub-contracted these responsibilities to independent property management companies (the "Property Managers") pursuant to Property Management Agreements.

8.   According to the Master Lease Agreement, if any money remained after the LeaseCo Subsidiary had paid the mortgage, operating expenses, and "base rent," then CIP was entitled to collect and keep the excess profit. However, if CIP collected any money from the LeaseCo Subsidiary before these expenses were paid, CIP would be in violation of the Master Lease Agreement.

### The Scheme to Defraud

9.      From at least in or about 2008, through at least in
or about 2012, CARLTON P. CABOT, the defendant, and CC-1 engaged in
a scheme to defraud the TIC Investors by misappropriating funds
belonging to the TIC Investments and then concealing the
misappropriations by providing false and misleading financial
reports and other information to the TIC Investors.

10.     As part of the scheme, CARLTON P. CABOT, the
defendant, and CC-1 repeatedly caused funds to be transferred out
of the LeaseCo Subsidiaries' bank accounts and into one of two CIP
bank accounts ("CIP Bank Account 1" and "CIP Bank Account 2";
collectively, the "CIP Bank Accounts") before the Property Managers
could use the funds to pay for required expenditures – such as the
operating expenses of the TIC properties and "base rent"
disbursements to the TIC Investors – in violation of the Master Lease
Agreements.  CABOT and CC-1 then used these funds to pay for the
following three unauthorized purposes, without the knowledge or
authorization of the TIC Investors:

a.     First, CABOT and CC-1 used these funds to pay
for millions of dollars of personal expenses, including expensive
cars, luxury rental apartments, and private school tuitions.

b.     Second, CABOT and CC-1 used these funds to pay
for CIP business expenses, including an approximately $1,125,651

-4-

civil settlement to certain TIC Investors who had sued Cabot, CC-1, CIP, and a CIP subsidiary.

c.     Third, CABOT and CC-1 caused millions of dollars to be transferred from the CIP Bank Accounts to the bank accounts of LeaseCo Subsidiaries that had no available funds to cover their operating expenses and investor distributions.  In this way, CABOT and CC-1 were able to perpetuate the fraud scheme by propping up failing TIC Investments using funds belonging to other, more financially solvent TIC Investments.

11.    To conceal their misappropriation of TIC Investment funds from the TIC Investors, CARLTON P. CABOT, the defendant, and CC-1 provided false and misleading financial reports to the TIC Investors that intentionally hid the fact that CIP owed large sums of money to the TIC Investments.  CC-1 also gave false and misleading information to the TIC Investors about how the TIC Investment funds were managed in order to prevent the TIC Investors from learning the true financial status of their investment.

12.    CARLTON P. CABOT, the defendant, and CC-1 both profited substantially from this scheme.  From in or about 2008, through in or about 2012, CABOT took approximately $3,700,000 in partnership distributions from CIP, and CC-1 took approximately $2,600,000, even though CIP lost more than $21,000,000 during the same time period.  These distributions were funded with

misappropriated money belonging to the TIC Investments.

13. By in or about the end of 2012, CIP disbanded and effectively went out of business. By that point, CIP and its principals – CARLTON P. CABOT, the defendant, and CC-1 – owed approximately $17 million to the TIC Investments, which has never been repaid.

## STATUTORY ALLEGATIONS

14. From at least in or about 2008, through at least in or about 2012, in the Southern District of New York and elsewhere, CARLTON P. CABOT, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit securities fraud, in violation of Title 15, United States Code, Section 78j(b) and 78ff, and Title 17 Code of Federal Regulations, Section 240.10b-5, to wit, CABOT participated in a scheme to misappropriate funds belonging to the TIC Investments and to conceal the misappropriations by providing false and misleading financial reports and other false and misleading information to the TIC Investors.

15. It was a part and an object of the conspiracy that CARLTON P. CABOT, the defendant, and others known and unknown, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, would and did use and employ manipulative and deceptive devices and

contrivances in connection with the purchase and sale of securities, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff.

### Overt Acts

16.   In furtherance of the conspiracy and to effect its illegal object, CARLTON P. CABOT, the defendant, and others known and unknown, committed the following overt acts, among others, in the Southern District of New York and elsewhere:

a.   Between on or about April 1, 2010, and on or about April 30, 2010, CABOT and CC-1 caused approximately $27,500 to be transferred from the CIP Bank Accounts to one of CABOT's personal bank accounts, where the funds were used to pay for, among other things, CABOT's apartment rental in Miami, Florida, and his daily living expenses.

b.   Between in or about January 2011, and in or about March 2012, CABOT and CC-1 caused approximately $41,867 to be

-7-

transferred from CIP Bank Account 1 to a private college located in
Connecticut to pay for the college tuition of one of CABOT's children.

        c.    On or about August 28, 2012, CABOT and CC-1
caused a check in the amount of $12,790 to be drawn on CIP Bank Account
1 and sent to a private university located in Pennsylvania to pay
for the college tuition of one of CABOT's children.

        d.    On or about July 15, 2011, CABOT and CC-1 caused
multiple wire transfers totaling approximately $230,000 to be sent
from several different LeaseCo Subsidiary bank accounts to CIP Bank
Account 2 to pay a portion of a civil settlement owed to certain TIC
Investors who had sued CABOT, CC-1, CIP, and a CIP subsidiary.

        e.    On or about October 14, 2011, CABOT and CC-1
caused multiple wire transfers totaling approximately $247,000 to
be sent from several different LeaseCo Subsidiary bank accounts to
CIP Bank Account 2 to pay a portion of a civil settlement owed to
certain TIC Investors who had sued CABOT, CC-1, CIP, and a CIP
subsidiary.

        f.    On or about February 11, 2011, CABOT and CC-1
caused approximately $75,000 to be transferred out of a LeaseCo
Subsidiary's bank account and into a different LeaseCo Subsidiary's
bank account, via CIP Bank Account 2, without the knowledge or consent
of the TIC Investors.

        g.    In or about 2010, CC-1 created a balance sheet

-8-

for a particular TIC Investment to be included in a quarterly investor report for the period ending March 31, 2010, which CC-1 had manipulated to fraudulently eliminate a debt owed by CIP to the TIC Investment.

       h.   In or about 2011, CC-1 created a balance sheet for a particular TIC Investment to be included in a quarterly investor report for the period ending March 31, 2011, which CC-1 had manipulated to fraudulently eliminate a debt owed by CIP to the TIC Investment.

       (Title 18, United States Code, Section 371.)

<u>COUNT TWO</u>

**(Securities Fraud)**

The Grand Jury further charges:

       17.  The allegations set forth above in Paragraphs One through Thirteen are realleged and incorporated by reference as if set forth fully herein.

       18.  From at least in or about 2010, through at least in or about 2012, in the Southern District of New York and elsewhere, CARLTON P. CABOT, the defendant, willfully and knowingly, directly and indirectly, by use of the means and instrumentalities of interstate commerce, and of the mails, would and did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities, in violation of Title 17,

Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud, (b) making untrue statements of material facts and omitting to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon other persons, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, to wit, CABOT misappropriated funds belonging to the TIC Investments knowing that such misappropriations were concealed through false and misleading financial reports and other false and misleading information provided to the TIC Investors.

(Title 15, United States Code, Sections 78j(b) and 78ff; Title 17, Code of Federal Regulations, Section 240.10b-5; and Title 18, United States Code, Section 2.)

## COUNT THREE

### (Conspiracy to Commit Wire Fraud)

The Grand Jury further charges:

19.  The allegations set forth above in Paragraphs One through Thirteen are realleged and incorporated by reference as if set forth fully herein.

20.  From at least in or about 2008, through at least in or about 2012, in the Southern District of New York and elsewhere, CARLTON P. CABOT, the defendant, and others known and unknown,

-10-

willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343, to wit, CABOT participated in a scheme to misappropriate funds belonging to the TIC Investments and to conceal the misappropriations by providing false and misleading financial reports and other false and misleading information to the TIC Investors.

21.   It was a part and an object of the conspiracy that CARLTON P. CABOT, the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343.

(Title 18, United States Code, Section 1349.)

## COUNT FOUR

### (Wire Fraud)

The Grand Jury further charges:

22.   The allegations set forth above in Paragraphs One through Thirteen are realleged and incorporated by reference as if

-11-

set forth fully herein.

23.     From at least in or about 2010, through at least in or about 2012, in the Southern District of New York and elsewhere, CARLTON P. CABOT, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, Section 1343, to wit, CABOT misappropriated funds belonging to the TIC Investments knowing that such misappropriations were concealed through false and misleading financial reports and other false and misleading information provided to the TIC Investors, and in connection therewith and in furtherance thereof, engaged in interstate telephone calls and caused wire transfers of funds to be transmitted interstate.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FIVE

### (Conspiracy to Commit Money Laundering)

The Grand Jury further charges:

24.     The allegations set forth above in Paragraphs One

-12-

through Thirteen are realleged and incorporated by reference as if set forth fully herein.

25.   From at least in or about 2008, through at least in or about 2012, in the Southern District of New York and elsewhere, CARLTON P. CABOT, the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to commit money laundering, in violation of Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 1957.

26.   It was a part and an object of the conspiracy that CARLTON P. CABOT, the defendant, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, knowing that the property involved in certain financial transactions represented the proceeds of some form of unlawful activity, willfully and knowingly would and did conduct, and caused to be conducted, such financial transactions which in fact involved the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), to wit, CABOT caused funds to be transferred into and out of the LeaseCo Subsidiaries' bank accounts, via the CIP Bank Accounts, in order to perpetuate the fraud scheme alleged in Counts One through Four by keeping failing TIC Investments financially solvent.

-13-

27.   It was further a part and an object of the conspiracy that CARLTON P. CABOT, the defendant, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, willfully and knowingly would and did engage in and cause others to engage in a monetary transaction, as that term is defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property that was of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957, to wit, CABOT caused wire transfers of over $10,000 each to be sent from the CIP Bank Accounts to pay for personal and business expenses, knowing that the funds transferred represented the proceeds of the fraud scheme alleged in Counts One through Four.

(Title 18, United States Code, Section 1956(h).)

## COUNT SIX

### (Money Laundering)

The Grand Jury further charges:

28.   The allegations set forth above in Paragraphs One through Thirteen are realleged and incorporated by reference as if set forth fully herein.

29.   From at least in or about 2010, through at least in or about 2012, in the Southern District of New York and elsewhere, CARLTON P. CABOT, the defendant, in an offense involving and affecting interstate and foreign commerce, knowing that the property

-14-

involved in certain financial transactions represented the proceeds of some form of unlawful activity, willfully and knowingly would and did conduct, and caused to be conducted, such financial transactions which in fact involved the proceeds of specified unlawful activity, with the intent to promote the carrying on of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i), to wit, CABOT caused funds to be transferred into and out of the LeaseCo Subsidiaries' bank accounts, via the CIP Bank Accounts, in order to perpetuate the fraud scheme alleged in Counts One through Four by keeping failing TIC Investments financially solvent.

(Title 18, United States Code, Sections 1956(a)(1)(A)(i) and 2.)

## COUNT SEVEN

### (Illegal Monetary Transactions)

The Grand Jury further charges:

30.   The allegations set forth above in Paragraphs One through Thirteen are realleged and incorporated by reference as if set forth fully herein.

31.   From at least in or about 2010, through at least in or about 2012, in the Southern District of New York and elsewhere, CARLTON P. CABOT, the defendant, in an offense involving and affecting interstate and foreign commerce, willfully and knowingly would and did engage in and cause others to engage in a monetary

-15-

transaction, as that term is defined in Title 18, United States Code, Section 1957(f)(1), in criminally derived property that was of a value greater than $10,000, in violation of Title 18, United States Code, Section 1957, to wit, CABOT caused wire transfers of over $10,000 each to be sent from the CIP Bank Accounts to pay for personal and business expenses, knowing that the funds transferred represented the proceeds of the fraud scheme alleged in Counts One through Four.

(Title 18, United States Code, Sections 1957 and 2.)

## FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FOUR

32.  As a result of committing the offenses alleged in Counts One through Four of this Information, CARLTON P. CABOT, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461, all property, real and personal, which constitutes or is derived from proceeds traceable to the commission of the offenses alleged in Counts One through Four.

## FORFEITURE ALLEGATION AS TO COUNTS FIVE THROUGH SEVEN

33.  As a result of committing the offenses alleged in Counts Five through Seven of this Information, CARLTON P. CABOT, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), all property, real and personal, involved in the offenses alleged in Counts Five through

-16-

Seven, or any property traceable to such property.

<u>Substitute Asset Provision</u>

34.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of CARLTON P. CABOT, the defendant,

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third party;

      c.    has been placed beyond the jurisdiction of the court;

      d.    has been substantially diminished in value; or

      e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of said defendant up to the value of the forfeitable property described above.

(Title 18, United States Code, Sections 981 and 982;
Title 21, United States Code, Section 853;
Title 28, United States Code, Section 2461.)

FOREPERSON

Preet Bharara
PREET BHARARA
United States Attorney /pnk

-17-

Form No. USA-33s-274 (Ed. 9-25-58)

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

## UNITED STATES OF AMERICA

- v. -

## CARLTON P. CABOT,

**Defendant.**

## SUPERSEDING INDICTMENT

S1 15 Cr. _____ (JMF)

(15 U.S.C. §§ 78j(b), 78ff;
17 C.F.R. § 240.10b-5;
18 U.S.C. §§ 371, 1343, 1349,
1956, 1957, and 2.)

_____
Preet Bharara
United States Attorney.

**A TRUE BILL**

_____
Foreperson.

10/7/15   Fld. Superseding Indictment.

Pitman, USMJ